UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TERRANCE PRUDE AND
SCOTTIE BALDWIN,

                Plaintiffs,

                v.                              Case No. 14-CV-856

DAVID A. CLARKE, JR., AND
MILWAUKEE COUNTY,

                Defendants.

## DECISION AND ORDER

Plaintiffs Terrance Prude and Scottie Baldwin are proceeding *pro se* on claims that the Milwaukee County Jail (Jail) visitation policy violated their constitutional rights by preventing them from visiting with their minor children during their brief stays at the Jail.

### I. PROCEDURAL BACKGROUND

This case has a complicated procedural history and a number of pending motions, including motions for summary judgment filed by both the plaintiffs and the defendants.

In July 2014 this case was transferred from the United States District Court for the Western District of Wisconsin because venue was improper there. (ECF No. 56.) On February 27, 2015, this court entered a Scheduling Order that set a discovery deadline of May 29, 2015, and a dispositive motion deadline of June 29, 2015. (ECF No. 62.) Less than a week later, the plaintiffs, who had filed a motion for summary judgment in the Western District (ECF No. 45), filed a renewed summary judgment motion in this court. (ECF No. 63.)

The defendants filed their response to the plaintiffs' motion for summary judgment, along with a motion for extension of time to file a supplemental response to plaintiffs' motion. (ECF No. 72.) They asked for a May 18, 2015, response deadline so that they could incorporate testimony from the plaintiffs' depositions, which were scheduled to take place on April 7, 2015. (ECF No. 99, ¶ 26.) The defendants filed their supplemental response on May 18, 2015. (ECF No. 80.) The court will grant the defendants' motion for extension of time and consider their supplemental response.

At his deposition Baldwin indicated that he was not willing to answer questions because he had not heard from Prude since receiving the Notice of Deposition. (ECF No. 99, ¶ 28.) He also raised a concern about his deposition proceeding before Prude's. (ECF No. 99, ¶ 32.) However, he did not contact defense counsel before the deposition regarding any concerns he had about participating in his deposition. (ECF No. 99, ¶¶ 29-30.) He refused to answer substantive questions regarding (1) visitation with his

children while he was at the Jail; (2) the periods of time he spent at the Jail; (3) his interactions with personnel at the Jail regarding efforts to visit with his children; (4) grievance letters Baldwin forwarded to personnel at the Jail relating to visitation issues and responses he received; (5) whether Baldwin had any direct communications or interactions with Sheriff David Clarke about visitation issues at the Jail; (6) responses Baldwin provided to written discovery; (7) whether Baldwin experienced any physical injury or received any medical treatment associated with the allegations referenced in his complaint; (8) whether he intended to proceed against Sheriff Clarke in his official or individual capacity; and (9) damages. (ECF No. 99, ¶ 31.)

Twice during Baldwin's deposition counsel for the defendants informed Baldwin that if he did not answer questions a motion for sanctions might be filed against him and one of the sanctions that could be requested would be the dismissal of his claims. (ECF No. 99, ¶ 35.) Baldwin still refused to answer. (ECF No. 99, ¶ 36.) The fees and expenses incurred by the defendants associated with Baldwin's deposition on April 7, 2015, are $925.00. (ECF No. 99, ¶ 41.)

Prude's deposition went forward without incident. However, on May 22, 2015, Prude filed a motion to strike the transcript of his deposition because the defendants did not submit the entire transcript. (ECF No. 83.) In his motion Prude relies on "rule 12(f)" regarding electronically filed documents. *Id.* In responding to this motion the defendants note that the rule Prude relies on is part of the Western District's electronic

3

Case 2:14-cv-00856-WED   Filed 02/17/16   Page 3 of 19   Document 120

filing rules and that the Eastern District does not have the same requirement that deposition transcripts be filed in their entirety. (ECF No. 88.) The defendants also submitted the entire transcript of Prude's deposition, mooting the motion in any event.

Also on May 22, 2015, the plaintiffs filed an unsigned motion (ECF No. 84) to strike the affidavit of James Cox, a Milwaukee County Sheriff's Office Captain, submitted in response to the plaintiffs' summary judgment motion. In his affidavit, Cox stated that he listened to the recordings of four phone calls placed by Prude from the Jail and that Sheriff Clarke was not a participant in any of them. (ECF No. 68.) Although the motion itself is unsigned, a violation of Federal Rule of Civil Procedure 11(a), the plaintiffs' brief in support of their motion is signed by both plaintiffs and the court will construe it as the motion to strike. In their motion the plaintiffs maintain that affidavits must be based on personal knowledge and that Cox's affidavit improperly presents Cox as an expert on voice identification. The court notes that Cox has known and worked with Clarke for many years and may have personal knowledge regarding what his voice sounds like. In any event, the court finds that Cox's affidavit is not material to the resolution of the parties' motions for summary judgment. As a result, the court will deny the plaintiffs' motion as moot.

On June 29, 2015, the defendants filed a motion for summary judgment and a motion for sanctions. In their motion for summary judgment, the defendants argue that Prude lacks standing to assert a familial relationship claim because his parental rights

4

had been terminated with regard to the child he wanted to have visit him at the Jail. (ECF No. 95.) In their motion for sanctions, the defendants state that Baldwin refused to be deposed and ask that he be ordered to pay the costs incurred for the attempted deposition and that he be compelled to participate in a deposition. (ECF No. 96.) They also ask for additional time to file another motion for summary judgment with respect to the merits of Baldwin's claims once he has been deposed.

The plaintiffs responded to the defendants' motion for summary judgment on July 2, 2015 (ECF No. 103), and the defendants filed their reply brief on July 16, 2015 (ECF No. 105). The plaintiffs then submitted an affidavit (that purports to be from both plaintiffs) on July 20, 2015 (ECF No. 106) and a surreply brief on July 24, 2015 (ECF No. 107). In the affidavit, the plaintiffs suggest that the defendants did not have permission to depose them under Federal Rule of Civil Procedure 30(a)(2)(A)(ii). However, that permission was granted in the court's Scheduling Order (ECF No. 62, ¶ 1); no separate order was required.

The plaintiffs also argue that the defendants' attorney asked Baldwin the same questions in his deposition that were asked during written discovery, which made the deposition subject to Rule 27. But Rule 27, which sets forth procedures for depositions taken before a case is filed or while an appeal is pending after judgment has been entered, does not apply to this case. Because this case is still pending and judgment has not been entered, Rule 30 applies to these depositions. The defendants were free to

5

depose Baldwin and Prude regarding any matters relevant to their claims. Fed.R. Civ. P. 26(b)(1).

The plaintiffs further argue that Baldwin did not know what could and could not be asked and did not know what to object to in his deposition. The plaintiffs argue that not allowing Prude to be present at Baldwin's deposition denied him access to his jailhouse lawyer with whom Baldwin wished to confer during the deposition. But a *pro se* plaintiff has no right to confer with a co-plaintiff or a jailhouse lawyer during a deposition. *See Doss v. Gilkey*, 649 F.Supp.2d 905, 912 (S.D. Ill. 2009) (a non-attorney cannot represent anyone but himself).

In their surreply brief, the plaintiffs set forth arguments regarding the merits of the case. They also argue that Baldwin's actions were not "willful." They admit that Baldwin pre-signed about thirty signature pages before this lawsuit began in order to make litigation convenient for Prude, who was litigating this case on Baldwin's behalf as Prude saw fit. (ECF No. 107 at 3.)

On July 27, 2015, the defendants filed a motion to strike any summary judgment documents filed by the plaintiffs after July 16, 2015. (ECF No. 108.) However, the documents defendants move to strike reveal important information regarding how the plaintiffs have litigated this case and the court will not strike them. Also, to the extent the documents contain arguments regarding the merits of the case, the court will consider them. The court will deny the defendants' motion to strike.

6
Case 2:14-cv-00856-WED   Filed 02/17/16   Page 6 of 19   Document 120

On August 3, 2015, Prude filed a motion to amend the joint affidavit (ECF No. 106) because the signature page was not dated (ECF No. 111). The court will grant this motion and consider the affidavit as though it was signed and dated when originally filed.

Finally, on September 15, 2015, Prude submitted over 100 pages of documents. (ECF No. 112.) The defendants responded with a letter questioning whether Prude intended to file the documents in this case since many of them relate to other legal proceedings. (ECF No. 114.) Prude then engaged in correspondence with the Clerk of Court's office regarding purchasing copies of some of the documents he submitted on September 15. (ECF Nos. 115-118.) The court will not consider these documents as part of any pending motion as they were not properly submitted to the court and their relevance has not been explained by Prude.

The court now turns to the parties' motions for summary judgment and the defendants' motion for sanctions.

## II. FACTUAL BACKGROUND

The facts are taken from a number of documents filed by the parties, including the parties' proposed findings of fact and responses and replies, as well as affidavits and declarations submitted in supports of the parties' motions. In support of their motion for summary judgment, the plaintiffs rely on the facts presented in their sworn complaint.

### A. Parties

#### 1. Terrance Prude

Prude is a state prisoner primarily housed at Waupun Correctional Institution. (ECF No. 71, ¶ 28.) He has one child, a son named Terrance Prude, Jr., who was born on July 21, 2000. (ECF No. 99, ¶ 1.) Between October and December of 2004, Prude relinquished his parental rights with respect to Terrance Prude, Jr. (ECF No. 99, ¶ 12.) According to Prude, he had a long prison term to serve and wanted Terrance Prude, Jr. to have a stable upbringing. *Id.* Prude's parental rights with regard to Terrance Prude, Jr. were already terminated before he was subject to the Jail's visitation policy in 2009 and 2010. *Id.*

Prude testified at his deposition that he was incarcerated when Terrance Prude, Jr. was born and that he has been incarcerated continuously since that time. (ECF No. 99, ¶ 13.) Prude has never lived in the same house or apartment as Terrance Prude, Jr. and does not know the names of any of the schools he has attended. (ECF No. 99, ¶¶ 14-15.) The last time Prude saw Terrance Prude, Jr. was in 2002, when he visited Waupun Correctional Institution a few times. (ECF No. 99, ¶ 16.)

Prude was at the Jail from July 26, 2009, to August 1, 2009 (7 days), September 24, 2009, to October 1, 2009 (8 days), and for a period of time during January 2010. (ECF No. 71, ¶ 29.) Prude was temporarily located at the Jail so that he could participate in criminal proceedings being held in Milwaukee County Circuit Court. *Id.* On three

occasions while Prude was at the Jail his family attempted to bring Terrance Prude, Jr. to visit him but the Jail's visiting policy did not allow anyone under eighteen years of age to visit inmates at the Jail. (ECF No. 1, pp. 4-6.) At the time visits at the Jail were not contact visits: all visits were on television screens inside small booths and the visitors were never on the same floor as the inmates they were visiting. (ECF No. 1, p. 5.)

### 2. Scottie Baldwin

Baldwin is a state prisoner who was at the Jail for five days, from September 26, 2013, to September 30, 2013, to participate in proceedings in his own criminal case. (ECF No. 71, ¶¶ 31-32.) While he was at the Jail, Baldwin's family brought his son to visit him but he was denied visitation with his son because the Jail's visitation policy did not allow anyone under eighteen years of age to visit inmates at the Jail. (ECF No. 1, pp. 6-7.)

### 3. Defendants

The defendants are Milwaukee County and Milwaukee County Sheriff David E. Clarke, Jr.

### B. Escape from the Milwaukee County Jail

Before December 21, 2001, the Jail visitation policy allowed individuals housed at the Jail to visit with persons under the age of 18 if accompanied by someone who was 21 years old or older. (ECF No. 71, ¶ 1.) On December 6, 2001, an escape took place at the Jail. (ECF No. 71, ¶ 5.) The individual who escaped had been convicted of first degree reckless homicide. *Id.* The escape was discovered when a Sheriff's Office employee went

9
Case 2:14-cv-00856-WED   Filed 02/17/16   Page 9 of 19   Document 120

to notify an individual in custody that his visit was over and discovered that the visiting booth was empty except for orange clothing laying on the floor. (ECF No. 71, ¶ 6.) The window that separated the visitor from the inmate was no longer intact. (ECF No. 71, ¶ 8.) The escapee put on women's clothing and a wig, walked through areas where visitors were allowed to be present, and then walked out of the Jail with other visitors. *Id.*

### C. Milwaukee County Jail Policy

After the escape the Jail modified its visitation policy effective December 21, 2001. (ECF No. 71, ¶ 9.) The December 21, 2001, policy modifications included: (1) an expansion of the reasons for which a jail visit could be denied or canceled; (2) changes to the procedures for handling Protective Custody and Maximum Security inmates during visitation; (3) continuous rounds in visiting areas while visiting sessions were in progress; and (4) deputies checking the fluorescent hand stamps of all visitors before they could leave the visiting area. (ECF No. 71, ¶ 10.) It was believed that the security and safety at the Jail would be enhanced if persons under the age of 18 were no longer allowed to participate in visits at the Jail because parents did not always monitor their children, resulting in Jail staff having to monitor them, which prevented staff from focusing on security concerns during visitation time. (ECF No. 71, ¶ 11.) Without minors present, there would be fewer individuals for staff to search and monitor during visitation. *Id.* In addition, it was felt that it would be prudent to eliminate the risk of

minors being present should an individual housed at the Jail escape by entering an area where visitors are allowed to be present. *Id.*

When the changes were made, Sheriff Lev Baldwin was the sheriff of Milwaukee County. (ECF No. 71, ¶ 13.) David Clarke did not become sheriff of Milwaukee County until March 2002. (ECF No. 71, ¶ 14.)

Because of the December 6, 2001 escape, the Jail began exploring alternative visitation methods. (ECF No. 71, ¶ 15.) By 2004 a new video visitation system was installed at the Jail. *Id.* Visitors would remain on the lobby level of the building and given access to a visitation booth equipped with a computer and other hardware that would facilitate a video visitation. (ECF No. 71, ¶ 16.) The inmate would be in a similar visitation booth on the floor where the inmate was housed. (ECF No. 71, ¶ 17.)

In 2014, the Jail sought ways to modify its video visitation system so that individuals at an off-site (or even out of state) location could participate in a video visit. (ECF No. 71, ¶ 19.) In October 2014 Jail policy was modified to include off-site video visitation. (ECF No. 71, ¶ 21.) The new policy permitted children under 18 to participate in off-site video visitations with inmates at the Jail. (ECF No. 71, ¶ 22.) Visitors who wish to participate in off-site video visitation can do so using a desktop computer, a laptop computer, an ipad or other tablet, or a smart phone. (ECF No. 71, ¶ 24.) Off-site video visitation is a new technology in the correctional industry. (ECF No. 71, ¶ 26.) The entity that provides the service for the Jail first began testing video visitation systems and

options less than eighteen months before April 1, 2015. *Id.* It has only completed installation of off-site video visitation services at two correctional facilities, one of which is the Jail. (ECF No. 71, ¶ 27.)

### III.    SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal

12
Case 2:14-cv-00856-WED   Filed 02/17/16   Page 12 of 19   Document 120

knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## IV. ANALYSIS

Prude and Baldwin submit that they are entitled to summary judgment because they believe that Milwaukee County's policy prohibiting children visiting the Jail is unconstitutional as a matter of law. The defendants argue that they are entitled to summary judgment because the Jail's policy of not allowing visitors under 18 was reasonably related to a legitimate penological interest. The defendants also make specific arguments regarding each plaintiff, which are considered below.

### A. Prude

The defendants argue that Prude has no standing to pursue his claims regarding the visitation policy at the Jail because his parental rights were terminated before Prude was housed at the Jail and Terrance Prude, Jr. attempted to visit him.

Prude attempted to present facts regarding his contact with Terrance Prude, Jr. after the termination of his parental rights, but contact or a personal relationship does not change their legal relationship. By the time he spent time at the Jail, Prude no longer had a right to maintain a familial relationship with Terrance Prude, Jr. Parents whose parental rights are terminated lose all constitutional rights with regard to those children upon entrance of the termination order. *See Davis v. Thornburgh*, 903 F.2d 212, 219-20 (3d Cir. 1990).

In *Overton v. Bazzetta*, 539 U.S. 126, 133 (2003), when reviewing the visitation policy at issue the Supreme Court acknowledged that "[t]o reduce the number of child visitors, a line must be drawn, and the categories set out by these regulations are reasonable. Visits are allowed between an inmate and those children closest to him or her-- children, grandchildren, and siblings." *Overton*, 539 at 133. It concluded that "[t]he prohibition on visitation by children as to whom the inmate no longer has parental rights is simply a recognition by prison administrators of a status determination made in other official proceedings." *Overton v. Bazzetta*, 539 U.S. 126, 133 (2003).

Because Prude's claims are based on the attempted visits of a child with whom he no longer had a right to a familial association, the defendants are entitled to summary judgment on his claims. For the same reason, the court will deny Prude's motion for summary judgment.

**B.   Baldwin**

Turning to Baldwin, the court is unable to meaningfully consider the merits of his claims because of his refusal to be deposed. The defendants argue that the court should dismiss Baldwin's claims as a sanction under Federal Rule of Civil Procedure 37(d) for his refusal to answer questions at his deposition. Alternatively, the defendants ask for (1) monetary sanctions because they incurred $925.00 in expenses attempting to depose Baldwin, (2) another opportunity to depose Baldwin, and (3) leave to file another motion for summary judgment after they have deposed Baldwin.

Rule 37(d)(1) allows the court to order sanctions if a party fails to appear for his deposition. Sanctions may include striking pleadings in whole or in part, staying further proceedings until the order is obeyed, dismissing the action or proceeding in whole or in part, or rendering a default judgment against the disobeying party. *See* Fed. R. Civ. P. 37(d)(3); Fed R. Civ. P. 37(b)(2)(A)(i)-(vi). "Instead of or in addition to these sanctions, the court must require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(d)(3).

Although Rule 37(d) does not contain a requirement that the court warn the party before dismissing his lawsuit as a sanction for not answering questions at his deposition, the Seventh Circuit Court of Appeals has emphasized the need to warn *pro se* litigants before taking such drastic action. In *McInnis v. Duncan*, 697 F.3d 661, 664 (7th Cir. 2012), the court noted that it has "held that a single missed filing deadline or status hearing does not support dismissal for failure to prosecute" but that it has "upheld dismissal for plaintiffs who fail to attend multiple hearings and have been warned of the possibility of dismissal." (Internal citations omitted). The court has "affirmed dismissals where a single nonappearance was combined with other instances of violating court orders." *Id.* (citations omitted).

Baldwin's conduct does not yet merit dismissal of his claims. Although the defendants' counsel warned Baldwin that defendants might seek dismissal of his case as a sanction for his refusal to answer questions, the court has not so warned him. However, because Baldwin's failure to be deposed was not substantially justified, the court does believe that monetary sanctions are appropriate. While under other circumstances an award of expenses would seem to be a just penalty, forcing a prisoner proceeding *in forma pauperis* to pay nearly $1,000 could effectively amount to a dismissal of his case if he cannot come up with the money. The court will require Baldwin pay the defendants $100, an amount that the court concludes is a just penalty under Rule 37(d)(3) for his failure to answer questions at his deposition.

There is another problem percolating regarding Baldwin's involvement in prosecuting this case. Prude has revealed that Baldwin was not participating in litigating this case. Rather, Baldwin pre-signed signature pages that Prude could append to anything he wanted to file without consulting Baldwin. This arrangement may have led to Baldwin refusing to be deposed, reliant as he was on Prude to prosecute his case for him. But Prude is not an attorney and cannot represent Baldwin, either at his deposition or otherwise in this case.

The court has serious questions regarding whether Baldwin wants to prosecute this case, especially now that Prude's claims have been dismissed and Baldwin resides at a different institution than Prude. Within twenty-eight (28) days of the entry of this

16
Case 2:14-cv-00856-WED   Filed 02/17/16   Page 16 of 19   Document 120

Order, Baldwin shall write to the court and advise it whether he wishes to continue litigating this case, including attending a second deposition and answering the questions asked of him by defense counsel. If Baldwin chooses to proceed, he must appear for a properly noticed deposition and answer the defendants' questions.

Baldwin's deposition must occur within forty-five (45) days after Baldwin advises the court of his intent to proceed with this case. Then the parties may file renewed motions for summary judgment within 60 days of Baldwin's deposition.

The court will deny without prejudice the defendants' motion for summary judgment as to Baldwin. The court also will deny without prejudice Baldwin's motion for summary judgment.

## V. ORDER

**IT IS THEREFORE ORDERED** that Prude's motion for summary judgment (ECF No. 63) is **DENIED**.

**IT IS FURTHER ORDERED** that Baldwin's motion for summary judgment (ECF No. 63) is **DENIED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that the defendants' motion for extension of time to file supplemental response (ECF No. 72) is **GRANTED**.

**IT IS FURTHER ORDERED** that Prude's motion to strike the deposition transcript of Terrance Prude (ECF No. 83) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the plaintiffs' unsigned motion to strike defendant's witness James Cox's affidavit (ECF No.84) is **STRICKEN**.

**IT IS FURTHER ORDERED** that, construing the plaintiff's brief in support of their motion to strike defendants' witness James Cox's affidavit (ECF No. 85) as the motion itself, the motion is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment (ECF No. 95) is **GRANTED as to plaintiff Terrance Prude and DENIED WITHOUT PREJUDICE as to plaintiff Scottie Baldwin**.

**IT IS FURTHER ORDERED** that plaintiff Terrance Prude's claims against the defendants are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the defendants' motion for sanctions (ECF No. 96) is **GRANTED in part and DENIED in part**.

**IT IS FURTHER ORDERED** that plaintiff Scottie Baldwin shall pay the defendants $100.00 for his failure to answer questions at his deposition.

**IT IS FURTHER ORDERED** that plaintiff Scottie Baldwin shall write to the court within twenty-eight (28) days and advise the court whether he wants to continue litigating this case.

**IT IS FURTHER ORDERED** that the defendants' motion to strike plaintiffs' summary judgment documents filed after July 16, 2015 (ECF No. 108) is **DENIED**.

**IT IS FURTHER ORDERED** that plaintiff Terrance Prude's motion to amend affidavit (ECF No. 111) is **GRANTED**.

Dated at Milwaukee, Wisconsin this 17th day of February, 2016.

_William E. Duffin_
WILLIAM E. DUFFIN
U.S. Magistrate Judge