# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**SCOTTIE BALDWIN,**

          **Plaintiff,**

      v.                                         Case No. 14-CV-856

**DAVID A. CLARKE, JR., AND
MILWAUKEE COUNTY,**

          **Defendants.**

---

## DECISION AND ORDER

---

Plaintiff Scottie Baldwin is proceeding on First and Fourteenth Amendment claims that the Milwaukee County Jail policy not allowing minor children to visit inmates violated his constitutional rights. This matter is before the court on the parties' motions for summary judgment, as well as several other motions filed by Baldwin.

### I. Undisputed Facts

Prior to December 21, 2001, visitations at the Milwaukee County Jail (the "Jail") took place on the floors on which individuals who were incarcerated were housed. All visits were "non-contact" visits. The visitor would be on one side of a glass partition wall and the person incarcerated at the Jail would be on the other side. Visitors under

the age of 18 were permitted to participate in the visitation as long as they were accompanied by an adult age 21 or older.

On December 6, 2001, an individual who had been convicted of first degree reckless homicide escaped from the Jail during a visitation. Apparently the glass partition "was no longer intact" and the inmate left disguised as a woman. There is no evidence that a minor had been present for the visitation.

In response to this incident, the Jail modified its visitation policy in a number of different ways effective December 21, 2001. One of the modifications was that persons under the age of 18 were no longer allowed to participate in visits with individuals incarcerated at the Jail. Several reasons were offered for the no-minors visitation policy. First, there would be fewer visitors for Jail staff to search and monitor during visitation times. Second, some adults who accompanied minors failed to keep a close eye on them, requiring Jail staff to have to monitor them rather than keep an eye on the inmates. Third, it eliminated the risk that minors would be present in the event a dangerous situation developed similar to the escape.

Beginning sometime in 2004 all visits at the Jail took place "in a video visit format." Visitors would come to the lobby of the Jail and check in with Jail personnel. They would then be provided access to a video visiting booth located on the lobby level of the Jail. The inmate would go to a video visiting booth on the level of the Jail on which he or she was incarcerated. Thus, the visitor and the individual incarcerated at

the Jail would not be on the same floor during visits. Notwithstanding this change in the manner in which visits took place, there was no modification to the policy prohibiting minors from participating in jail visits.

In 2013 Baldwin was a state prisoner housed at Waupun Correctional Institution (Waupun). Baldwin has a son with Rosalie Zabala named Romel Baldwin. Romel visited Baldwin fifteen to twenty times at Waupun and, during the fall of 2013, Baldwin talked to Romel on the telephone approximately twice a month.

On September 26, 2013, Baldwin was transferred to the Jail to participate in proceedings in his criminal case; he remained at the Jail until September 30, 2013. Zabala called the Jail on September 28, 2013, to schedule a visit with Baldwin. She was told she could not bring Romel along to visit because he was under eighteen years of age (he was six years old at the time). As a result, Baldwin did not get to see Romel while he was at the Jail.

Upon returning to Waupon, on October 1, 2013, Baldwin wrote a grievance to Inspector Bailey at the Jail, complaining that his son was not allowed to visit him while at the Jail due to the Jail policy. Baldwin wrote a similar letter to defendant Sheriff David Clarke. Bailey responded to Baldwin's correspondence with a letter stating: "Waupun Correctional, a state post-conviction detention facility, differs from the Milwaukee County Jail, a pre-trial detention facility. Children under 18 years of age are not permitted inmate visits at the Milwaukee County Jail." (ECF No. 128-2 at 2.)

Between 2002 and 2013 the Wisconsin Department of Corrections (DOC) performed an annual inspection of the Jail and authored an annual report about the Jail. In the annual reports the DOC never required or recommended that the Jail change or modify its visitation policy or procedures.

In October 2014 the Jail further modified its video visitation system to allow individuals at off-site (even out of state) locations to participate in a video visit with persons incarcerated at the Jail. Under this new policy children under the age of 18 were allowed to participate in off-site video visitations with inmates at the Jail. Remote video visitations began in November 2014. It is unclear from the party's submissions whether the Jail's policy for minors participating in video visits taking place at the Jail has changed since permitting minors to participate in the off-site video visits.

**II.     Procedural Background and Baldwin's Non-Dispositive Motions**

On March 7, 2016, the court entered an order providing a deadline for Baldwin's deposition and allowing the parties to file renewed motions for summary judgment within sixty days of Baldwin's deposition. Baldwin filed a motion for summary judgment on April 18, 2016, and on May 18, 2016, the defendants filed their own motion for summary judgment along with their response to Baldwin's motion for summary judgment. Baldwin then filed (a) a motion for extension of time to respond to the defendants' motion for summary judgment and (b) a motion to supplement his motion for summary judgment.  The court granted both motions.

On June 10, 2016, Baldwin filed a motion asking the court to take judicial notice under Federal Rule of Evidence 201 of various pleadings on the docket because he wanted to show that the defendants' arguments were inconsistent. But there is no need for the court to take judicial notice of documents that have been filed in this case; those documents are already part of the record. Thus, this motion is unnecessary and will be denied.

On June 24, 2016, Baldwin filed a motion asking for a 120-day extension of time to pay the remainder of the sanctions he owed the defendants for his earlier failure to fully participate in his deposition. The court will grant this motion and direct Baldwin to pay the remainder of the sanctions within sixty days of this order if he has not already done so.

On June 27, 2016, the court received two more motions from Baldwin: (1) a motion to file a surresponse and (2) a motion to properly support or address a fact, with exhibits attached, regarding Baldwin's complaints to Inspector Bailey and defendant Sheriff Clarke. The court will grant Baldwin's motion to file a surresponse and consider his arguments when it considers the parties' motions for summary judgment. The court will deny as moot Baldwin's motion to properly support or address a fact. It is not necessary for Baldwin to submit the exhibits attached to his motion because they were already attached to his motion for summary judgment.

Finally, on October 6, 2016, Baldwin filed a motion for leave to file a surreply and additional case citations. He no longer wishes to concede the issue of compensatory damages and has provided case law regarding his ability to recover damages for a First Amendment violation even in the absence of a physical injury. The court will not hold Baldwin to a concession that he later realized was inconsistent with the law. The court will grant this motion and consider all arguments regarding damages.

### III. Motions for Summary Judgment

### A. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions,

interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

**B.  Analysis**

Baldwin submits that he is entitled to summary judgment because the Jail policy entirely banning visits from minors impermissibly interfered with his constitutional right to maintain a relationship with his son. In their motion for summary judgment, the defendants contend that the Jail policy regarding minor visits was rationally related to a legitimate penological interest in security. The defendants also argue that Baldwin is unable to recover compensatory and punitive damages and that they are entitled to qualified immunity from any damages.[1]

The Constitution protects "certain kinds of highly personal relationships, including association among members of an immediate family." *Overton v. Bazzetta*, 539

---

[1] In support of their renewed motion for summary the defendants present two other arguments that do not relate to the merits of Baldwin's claims. First, they argue that Baldwin's failure to review and approve the summary judgment documents filed on his behalf in 2014 and 2015 requires that his first summary judgment motion be denied. But the court already denied that motion on February 17, 2016; it is not still pending. (ECF No. 120). Second, the defendants argue that under the court's March 7, 2016, order any renewed summary judgment motion filed by Baldwin could be based only on information developed after the court's February 17, 2016, order denying without prejudice his original summary judgment motion. Although the court's order certainly allowed the parties to include in their renewed motions for summary judgment information elicited during Baldwin's deposition, the parties were not limited to basing their renewed summary judgment motions on information elicited during Baldwin's deposition.

U.S. 126, 131 (2003) (quoting *Roberts v. United States Jaycees*, 468 U.S. 609, 618, 619-20 (1984)). Outside the prison context, there is "a right to maintain certain familial relationships, including association among members of an immediate family …." *Overton*, 539 U.S. at 131. However, "[t]he very object of imprisonment is confinement," "[a]n inmate does not retain rights inconsistent with proper incarceration," and "freedom of association is among the rights least compatible with incarceration." *Id.* (citations omitted).

In *Overton* the Supreme Court did not "attempt to explore or define the asserted right of association at any length or determine the extent to which it survives incarceration because the challenged regulations bear a rational relation to legitimate penological interests." *Id.* at 132. The regulation in question in *Overton* allowed visits by closely related minors, including children, stepchildren, grandchildren, or siblings of the inmate. *Id.* at 133.

A prison policy that restricts a prisoner's constitutional rights is valid if it is rationally related to legitimate penological interests. *Stojanovic v. Humphreys*, 309 Fed. Appx. 48, 51 (7th Cir. 2009) (citing *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003); *Turner v. Safley*, 482 U.S. 78, 89-91 (1987); *Lindell v. Frank*, 377 F.3d 655, 657-58 (7th Cir. 2004)). To determine whether a prison policy is rationally related to legitimate penological interests, the court must "ask (1) whether a rational connection exists between the policy and the legitimate interest advanced to justify it; (2) whether alternative means of

8

exercising the right are available notwithstanding the policy; (3) the impact that accommodating the right will have on prison resources; and (4) the absence of alternatives to the policy." *Id.*

According to the defendants, the penological interest behind the no minors visitation policy is security. They assert that the security concerns raised by the 2001 escape justified the ban on visits by minors. Because some adults who brought minors along with them to visits at the Jail did not pay close attention to the minors, Jail staff had to divert some of their attention away from watching the inmates to watch the minors. Moreover, the escape demonstrated that dangerous situations can develop during visitations, and the Jail did not want minors to get caught in the middle of any such future situation that might develop. Thus, a rational connection seems to exist between the policy and the legitimate interest advanced to justify it.

Having said that, the defendants do not explain how children visiting continued to present a security concern after the video visitation system was implemented in 2004. Video visits seem to be an alternative means of exercising the inmates' right to visit with their children notwithstanding the policy. The defendants do not explain why children needed to be precluded from visitation booths on the lobby level of the Jail when the inmates were on a different floor of the Jail, which is how Romel would have visited with Baldwin in 2013. Perhaps the same security concerns originally justifying the policy were not negated by the video visits (e.g., Jail staff resources may still have

had to be devoted to watching children not closely monitored by the adults accompanying them, and children were still at risk of being caught in the middle of a dangerous situation that might develop during Jail visits). But the defendants do not explain why those concerns continued to exist once visits were done by video.

Instead, the defendants state that Baldwin had alternative means of maintaining his relationship with his son, including telephone calls and visits with Baldwin at state prison. While that very well may be true, it does not establish that the Jail visitation policy was rationally related to the Jail's security concerns once video visits were implemented. If it was not, it does not matter that there may have been alternative means of exercising visitation rights.

The defendants have identified legitimate penological interests that were rationally related to the policy prohibiting visits by minors when it was implemented in 2001. But they have not established that such a rational relationship continued to exist once video visits were implemented. Genuine issues of material fact exist that preclude summary judgment for either party on the issue of whether the Jail's visitation policy in 2013 was rationally related to legitimate penological interests.

### C. Qualified Immunity

The defendants claim that they are entitled to qualified immunity, shielding them from liability for damages. Qualified immunity "protects government officials from suit for damages when their conduct does not violate clearly established statutory

or constitutional rights." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Determining whether a government official is entitled to qualified immunity involves two inquiries: "(1) whether the facts, taken in the light most favorable to the plaintiff, make out a violation of a constitutional right, and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Williams v. City of Chicago*, 733 F.3d 749, 758 (7th Cir.2013). If either inquiry can be answered in the negative, the official is entitled to summary judgment. Courts may address the two prongs of qualified immunity in either order. *Pearson*, 555 U.S. at 236.

A right is clearly established if "a reasonable official would have understood what he is doing violates that right." *Reichle v. Howards*, 132 S.Ct. 2088, 2093 (2012) (internal quotations and brackets omitted). "To prove that the official violated a clearly established right, a plaintiff must use Supreme Court precedent, circuit case law, or a consensus of out-of-circuit case decisions." *Gerhartz v. Richert*, 779 F.3d 682 (7th Cir. 2015) (citations omitted).

In response to the defendants' assertion of qualified immunity, Baldwin points to *Overton* as acknowledging a prisoner's continued right of association during incarceration. *See Overton*, 539 U.S. at 131-32. Baldwin submits that, while courts have upheld severe limits on visitation by children, a total ban is almost certainly unconstitutional. *See Buie v. Jones*, 717 F.2d 925, 929 (4th Cir. 1983) (Murnaghan, J.,

11

concurring) (collecting cases). This is especially true if the visitation limits are not based on a legitimate penological concern.

In reply, the defendants maintain that they are entitled to qualified immunity because reasonable restrictions are allowed on inmate visitation with family members; they again make arguments regarding the inmate escape in December 2001. The defendants also maintain that the DOC performs an annual inspection and authors an annual report regarding the Jail. This inspection includes a review of the Jail's policies, including the visitation policy, and the reports never stated that the ban on minors visiting the Jail was improper or should be changed.

Where the Supreme Court has acknowledged a right to associate with close family members and indicated that legitimate penological concerns must justify limitations on those rights, it is insufficient for the Jail to rely on the DOC to point out any constitutional deficiencies in its policies. As early as 2003, when the Supreme Court decided *Overton*, a reasonable Jail official would have understood that a total ban on visits by minors, without a showing of a legitimate penological interest that the ban is rationally related to, would violate inmates' rights to associate with their children. Resolution of genuine issues of material fact as to whether the visitation policy at issue was rationally related to the Jail's security concerns once video visits became available is a prerequisite to determining whether the defendants are entitled to qualified immunity.

### D. Damages

The defendants argue that Baldwin is not entitled to compensatory damages under 42 U.S.C. § 1997e(e) because he suffered no physical injury. Under § 1997e(e), a prisoner may not recover damages for mental or emotional injuries "without a prior showing of physical injury …." *Id.* Baldwin properly conceded that he was not entitled to these types of damages for mental or emotional injures because he suffered no physical injury.

However, the Court of Appeals for the Seventh Circuit has recognized compensatory damages for non-mental and non-emotional damages in the PLRA context. *Aref v. Lynch*, 833 F.3d 242, 264 (D.C. Cir. 2016) (citing *Rowe v. Shake*, 196 F.3d 778, 781 (7th Cir. 1999) ("A deprivation of First Amendment rights standing alone is a cognizable injury.")). Baldwin may receive an award of for this type of compensatory damages for the constitutional violation itself.

Baldwin also seeks punitive damages from the defendants. "[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983); *Siebert v. Severino*, 256 F.3d 648, 655 (7th Cir. 2001) ("punitive damages are recoverable under Section 1983 even in the absence of actual damages where the jury concludes that the defendant's conduct was 'motivated by evil intent or involved

reckless or callous indifference to the federally-protected rights of others'") (quoting *Erwin v. County of Manitowoc*, 872 F.2d 1292, 1299 (7th Cir. 1989)). However, § 1983 does not allow punitive damages claims against a municipality or a governmental official in his or her official capacity. *See Minix v. Canarecci*, 597 F.3d 824, 830 (7th Cir. 2010) (citing *United States ex rel. Chandler v. Cook County, Ill.*, 277 F.3d 969, 977 (7th Cir. 2002)).

To the extent that Baldwin states a claim against Sheriff Clarke in his individual capacity, he has not presented any evidence that Clarke's actions regarding the visitation policy rose to the level of callous or reckless disregard for Baldwin's rights. After he returned to Waupun, Baldwin wrote letters to Inspector Bailey and Sheriff Clarke. Only Bailey responded. Baldwin had no personal contact with Clarke. He presents no evidence indicating that Clarke was motivated by evil intent or had a reckless or callous indifference to Baldwin's rights. Therefore, Baldwin may not maintain a claim for punitive damages.

**IV. Conclusion**

For the reasons discussed above, the court concludes that genuine issues of material fact preclude summary judgment for either party on Baldwin's claims that the Jail's ban on visits from minors violated his right to see his minor son. The court will, therefore, deny Baldwin's motion for summary judgment and deny the defendants' motion for summary judgment.

**IV.    Order**

**IT IS THEREFORE ORDERED** that Baldwin's motion for the court to take judicial notice (ECF No. 145) is **denied**.

**IT IS FURTHER ORDERED** that Baldwin's motion for 120-day extension (ECF No. 150) is **granted**. If he has not already done so, Baldwin shall pay the remainder of the sanctions within sixty days of this order.

**IT IS FURTHER ORDERED** that Baldwin's motion to file a surresponse (ECF No. 151) is **granted**.

**IT IS FURTHER ORDERED** that Baldwin's second motion to properly support or address a fact (ECF No. 152) is **denied as moot**.

**IT IS FURTHER ORDERED** that Baldwin's motion to file a surreply (ECF No. 153) is **granted**.

**IT IS FURTHER ORDERED** that Baldwin's motion for summary judgment (ECF No. 128) is **denied**.

**IT IS FURTHER ORDERED** that the defendants' motion for summary judgment (ECF No. 130) is **denied**.

**IT IS FURTHER ORDERED** that the court will hold a telephonic status conference on March 6, 2017, at 10:00 a.m. to discuss further scheduling. The court will initiate the call.

Dated at Milwaukee, Wisconsin this 14th day of February, 2017.

*William E. Duffin*
WILLIAM E. DUFFIN
U.S. Magistrate Judge